Lardon, J.
The court of appeals (89 N. Y., 1) held that James Barr, as executor, who was wholly insolvent at the testator’s death, and still remains so, should be charged with the amount of his own note, which the testator held against him at the time of his death, as for so much money in his hands, and that he should apply and distribute the same in the payment of debts and legacies, and among the next of kin as part of the personal estate of the deceased. The note was inventoried, as doubtful, and the executor is unable to pay any part of it. The other defendants are his sureties upon a bond, which, upon the application of the parties interested, the executor gave to the effect that he would faithfully execute the trust reposed in him and obey all orders of the surrogate touching the administration of such trust. The surrogate, following the decision of the court of appeals, has ordered that the executor do apply and distribute the amount due upon the note as part of the personal estate of the testator. As he can do nothing of the kind, and legal, remedies against him have proved unavailing, this action is brought against his sureties. The court of appeals expressly stated in their opinion that “ whether his sureties could be held for this debt as so much money actually received by him, we are not called upon to determine, and do not determine.” They. also remark that “the statute says the debt shall be treated as money, and the courts have no right to say it shall not be so treated.” But they qualify this statement by adding, “it will not for all purposes stand upon the same footing as if he had actually received the money,” and instanced the fact that he could not, in case of his total inability to pay, be attached and punished for contempt, nor convicted for embezzlement, and they advise that the surrogate, in charging the executor, states that he does so because the statute compels it, and “'thus save all the rights of the executor, and to protect *687 him against consequences which perhaps ought not to follow from such a charge.”
Now it seems to me that if the consequences which usually follow a defaulting executor, in case he has actually wasted the assets he has received, ought not to follow him in this case, the consequences which usually follow Ms sureties ought not to follow them. They are usually entitled to be subrogated to all the remedies which the legatee or creditor has against an executor who has wasted assets, but in this case the usual remedies are denied the creditor and legatee, and, therefore, are denied the sureties. The testator did not, by his ownership of this note, have money or money’s worth. The sureties did not covenant to augment his estate out of their own, but if tMs action is sustained they will be compelled to do it.
They agreed, it is true, that the executor should “ obey the orders of the surrogate touching the administration of the estate,” and the surrogate has ordered that the executor pay the amount of this note. Now the executor cannot obey this order, because the estate brought him nothing to' do it with. Can he make something out of nothing? No; he has not defaulted, therefore, and the sureties simply agree to make good his default. The order rests and must rest upon the condition that the estate brought the means of obedience to his hands, or but for his fault as executor, might have brought them. The order is obeyed so far as the facts permit of its obedience. If it is to be construed as requiring the executor to make something out of nothing, then, to the extent of the capacity of the executor to make something out of nothing, the sureties are liable for the full execution of that capacity, and they are not shown to have defaulted. But why should the statute compel such an order? Because it is right that the order should operate if there was, is or shall be anything for it to operate upon. But if there is nothing, the order is harmless. The statute cannot create money, and if the money never existed, the statute has nothing to operate upon. These views find some support in the courts of other states.
The vigilance of counsel enables me to cite the following; Harker v. Irick, 10 N. J. Eq., 269; Ordinary v. Kershaw, 14 id., 528; McCarty v. Fraser, 62 Mo., 263; Garber v. Commonwealth, 7 Barr., 265; Piper's Estate, 15 Pa., 533.
The sureties of Barr are not liable and judgment must pass in their favor.
Before Learned, P. J.; Bockes and Peckham, JJ
Argued at January term, 1885.
Bockes, J.
—Passing several objections of a technical character, raised by the respondent’s counsel to the right *688 of recovery on the bond counted on in this case, to wit: that the bond was irregularly obtained and was prosecuted without authority or direction from the court, and that the docket of judgment, based on the surrogate’s decree and the issuing of execution thereon, was irregular and insufficient, we prefer to put our decision on the merits, as did the special term, in directing judgment for the defendants; and we might, as we think, be well satisfied to rest our affirmance of the judgment on the opinion then delivered by the learned judge before whom the case was tried. But a few additional suggestions may not perhaps be out of place. Of course, we owe entire obedience to the court of appeals decision in this case; but it will be seen on looking into the opinion of that court, that the determination of the question now before us was expressly reserved, with a strong intimation, however, that the sureties on the bond should not be held liable under the circumstances of this case because of Barr’s inability to meet and answer the requirements of the surrogate’s decree as to his own debt to the estate.
It is there said that while Barr’s debt to the estate must, by the terms of the statute, “be treated as money in his hands for the purposes of the administration; it will not for all purposes stand on the same footing as if he had actually received so much money; ” and, further, that he could not be held in contempt or as an embezzler because of his inability to make payment of it pursuant to the decree of the surrogate. Now, it would seem to follow that if not to be held in default when charged with contempt or noncompliance with the surrogate’s order, he should not be held in such default as would be necessary to charge his sureties because of such non-compliance; and so the court of appeals have held in effect, as we think, for if the decree of the surrogate be open to explanation to defeat a legal remedy which would follow from an observance of its exact letter in one case, and that, because of the injustice it would produce, it must also be open in like manner to answer the needs of justice in another.
As is well said by Mr. Justice Landón, in his opinion, “the sureties did not covenant' to augument the estate out of their own;” and, it may be added, this was not within the province of their undertaking.
It" was said, in the dissenting opinion in the court of appeals in this case: “Clearly the statute never could have intended to convert a worthless debt into a demand, the payment of which might be enforced by making sureties liable, who never intended or expected to assume any such obligation, and who were not understood to assume it at the time they became sureties.” True, this is said in the dis *689 senting opinion; but the prevailing opinion contains nothing in hostility to this view; indeed it is in entire consonance with this remark.
The injustice of holding the sureties liable in this case is obvious and serious, and it should not be permitted save under the pressure of absolute necessity. The defendant’s trouble here grows out of the express provision of the bond, holding the sureties hable to absolute obedience by the executor to the order of the surrogate. Scofield v. Churchill, 72 N. Y., 565; Thomson v. MacGregor, 81 id., 592, 598.
Were the sureties here, bound simply to fidelity on the part of the executor, the case would be widely different and without, its present difficulty. Still, we are inclined to the opinion that liability by the executor in this case for his own debt to the estate, as for money in hand, was not within the purview of the bond; that such liability was not contemplated by those executing it or indeed by the law pursuant to which it was required and given.
Of course we can but feel the forco of the argument of the learned counsel for the appellant, fortified as it is by the numerous decisions cited by him. But, as we think, holding in mind the peculiar facts hero certified to us, they are not directly in point, hence not conclusive of the question presented; and especially must we so conclude when we consider the strong intimation of the court of appeals, that the defendants might be entitled to their defense here interposed.
We are of the opinion that the provision of the statute declaring that a debt due from the executor to the estate shall be treated, in the rendering of his account, as money in hand, must be construed with reference to the ordinary obligation, which imposed on him only diligent, faithful, honest action, touching the administration of the estate committed to his charge.
The court of appeals so held, in effect, in this case by declaring that disobedience to the surrogate’s decree to the extent of his (Barr’s) own debt would not put him in contempt, or create against him a case of embezzlement. His sureties did not, by their bond guarantee the payment of his debt to the estate; but only guaranteed obedience by the executors to all orders of the surrogate, “touching the administration of the estate committed to him.” Has not Barr answered this obligation fully on his part? What was the estate committed to his charge as executor? Was it not, whatsoever, of money or property, which with due diligence and entire honestly could be made available by him for the payment of debts and for distribution ? The *690 debt of Barr was of no value. It did not go to enhance the estate in fact. Really, and in fact, it constituted no valuable or available part of “the estate committed to” the executors. But the orders, observance of which by the executors, were guaranteed by the defendant’s bond, were those made by the surrogate, “ touching the administration of such estate.” In this view of the case, a breach of the bond in suit was not established.
Judgment affirmed, with costs.