Will D. McEwen, Adm'r, Appellant, v. H. H. Fletcher, Gordon Fletcher, Lillian Fletcher, Wallace Bissell and Ina Brooks Bissell, Appellees.

Administrators: REPORTS: OBJECTIONS: WAIVER OF JURY TRIAL. 1 Where an administrator includes in his report his own personal liability to the estate, and submits to a trial of the issues tendered by the objections to the report without any demand for a jury or objection to a trial to the court, he will be deemed to have waived a jury trial.

Same: DEBT DUE FROM ADMINISTRATOR: JURISDICTION. When an 2 administrator includes his own personal indebtedness to the estate in his report as a part of the assets of the estate, and asks that the amount he reports be fixed as his liability, the court has jurisdiction to determine the extent of his liability and charge it against him.

Same: ASSETS OF ESTATE. Debts due from an administrator to the 3 estate are assets of the estate from the time they become due, especially where he has mixed the funds of the estate with his own, or reports them as assets in his hands.

Same: TRIAL TO COURT: EFFECT OF FINDINGS. Where issue is formed 4 upon the report of an administrator and the objections thereto, and is tried to the court without objection, the findings of the court have the force and effect of a verdict of a jury.

Same: INDEBTEDNESS OF ADMINISTRATOR: LIABILITY OF SURETIES. So 5 far as the liability of sureties on an administrator's bond is concerned, the indebtedness of the administrator to the estate should not be regarded as an asset as of the time of its maturity, if at that time and at all subsequent times he was in fact insolvent, and did not or could not pay the same.

Same: INDEBTEDNESS OF ADMINISTRATOR: ASSETS. The administrator 6 inventoried a demand debt due from himself to the estate as a deposit in his own bank. He made no report for more than a year and then only upon order of court, in which he showed money in his bank and a personal indebtedness, but no report was ever approved. It also appeared that his bank was a going concern for

more than a year after his appointment, that he kept no separate account with the estate, and there was no evidence of his insolvency until after expiration of the year for settlement of the estate. *Held,* his debt was properly charged against him by the court as an asset of the estate, because of his greater obligation to pay that debt, as he was bound to do so as long as he was solvent.

*Appeal from Pocahontas District Court.*—HON. A. D. BAILIE, Judge.

TUESDAY, MARCH 24, 1914.

THIS is a controversy over the final report of Will D. McEwen, as administrator of the estate of Hiram W. Bissell, deceased. From a finding sustaining the objections to the report and charging the administrator with the sum of $4,731.65, which he was ordered to turn over to the Clerk of the District Court forthwith, the administrator appeals.—*Affirmed.*

*J. M. Berry,* for appellant.

*Allen & Atkinson,* for appellees.

DEEMER, J.—Hiram W. Bissell died intestate some time in July of the year 1908, and on August 29th of the same year W. D. McEwen, the appellant, was appointed his administrator, giving bond as required by law. On October 26, 1908, he filed an inventory in which he scheduled as an asset the sum of $2,176.30, as being on deposit in what was called the City Exchange Bank of Pocahontas, of which he (McEwen) was the sole owner and proprietor, and over which he had personal supervision. One Doyle was cashier of this bank, and also kept the books. No report was made by the administrator until May 26, 1910, when one was filed showing cash on deposit in the bank in the sum of $497.26, and admitting a personal indebtedness of $1,900, and expenditures amounting to

$221.15. The administrator also inventoried two hundred and fifty shares of stock in the Pocahontas Railroad & Improvement Company, one share in the Pocahontas Heat & Light Company, and one shotgun, and in his first report, filed pursuant to an order of court, he said of this property: "That he has on hand property of the said estate as follows: One certificate for 250 shares of stock in the Pocahontas Railroad & Improvement Company, the face value of which is $6,250.00, and one shotgun, the value of which he is at this time unable to state. That the above is a full and true account of all moneys and credits of the estate of said H. W. Bissell or the property in the hands of this administrator and a true accounting of expenditures made by him."

He also scheduled a claim of his own against the estate amounting to $65, and another claim of one Thompson, filed against the estate of Susan Bissell, deceased, upon a note signed by her and by H. W. Bissell. The only action which the record shows was taken on this report was an examination of the administrator in open court in January of the year 1911, and that seems to have been followed by an order on the administrator to make a further and final report, which he did on January 2, 1911, and this is the report to which objections were filed by four of the adult heirs of the deceased. One Atkinson was appointed guardian ad litem for two minor heirs, and he also appeared and contested the report and objected to the discharge of the administrator. The last report of the administrator showed the following:

That at the time of his appointment as such administrator, to wit, on August 29, 1908, there was on deposit in the said City Exchange Bank, a bank then privately owned by this administrator, the sum of $497,26; said money being there to the credit of said deceased. That at the time of his appointment and prior thereto this administrator was privately owing to said Bissell the sum of $1,893.19; said debt being due as the balance of the consideration paid for certain real estate deeded by the said Bissell to Will D. McEwen shortly

prior to the death of the said Bissell. That this administrator by virtue of his office as such has in his possession belonging to said estate personal property as follows: A certificate for 250 shares of capital stock in the Pocahontas Railroad & Improvement Company, one share of stock in the Pocahontas Heat & Light Company, and one shotgun, all of doubtful value. That this administrator has tried to dispose of said personal property, but has been as yet unable to do so or find a buyer therefor. That he has been unable to get any offers from purchasers for the said stock in the Heat & Light Company and for the said gun. That he has received some offers for the said 250 shares of stock in the Pocahontas Railroad & Improvement Company, but said offers have been for much less than the appraised value thereof as the same was fixed by the collateral inheritance tax appraisers. That no other appraisers have been appointed as yet to appraise the said personal property. This administrator believes that an appraisement of said property should be made unless the court should order that said property be sold without appraisement. This administrator further reports: That since qualifying as such and, to wit, on January 3, 1910, he made and executed to L. C. Thornton and O. P. Malcom a general deed of assignment for the benefit of the creditors; said assignment having been made for the benefit of the creditors of both the said City Exchange Bank and of Will D. McEwen. That since making said assignment this administrator has filed with said assignees a claim in favor of the estate of Hiram W. Bissell for the money due and owing by the City Exchange and himself individually to said Hiram W. Bissell and his estate. That said claim is still unpaid, but the same has been allowed by said assignees. That same constitutes one of the assets of said decedent estate. That so long as said claim is unpaid or is not settled this estate cannot be closed and a final report made. That this administrator, since being appointed as such, has changed his residence to Des Moines, Iowa, and that to attend upon the administration of this estate at so great a distance requires extra time, labor, and expense, and as said estate cannot now be closed, but must wait the adjustment of the assignment estate, he believes it to be the best interests of said estate that he be relieved from further administration duties thereof. That he believes some resident person more convenient and acceptable should be appointed to close the

administration of said estate. This administrator therefore tenders this report as a complete and accurate statement of the conditions of said estate as the same, to the best of his knowledge, can be given, and in support thereof tenders and offers an accounting by examination under oath if the same is desired. He asks: That this court may fix the manner and kind of service to be given of the hearing on this report, and that the same may be accepted as his final report in case this court shall consider his application for discharge. That upon a complete hearing the same be accepted and approved, and that he be discharged and released upon the appointment and qualification of his successor. That the court make a reasonable allowance to him for his services and for his attorney in said estate. That in case he is not relieved from further duties with reference to said estate that this report be accepted as an intermediate report, and that the court enter an order authorizing a sale of the personal property belonging to said estate, now in the administrator's hands at either public or private sale without appraisement.

Among other objections filed to the report were the following:

That said report fails to show the true and correct amount of money in the hands of such administrator belonging to this estate. That said administrator has failed, neglected, and refused to preserve and administer the estate of the said deceased, Hiram W. Bissell, and has squandered, dissipated, and wasted the same, and the said administrator is not entitled to any compensation for what he has done as administrator of the said estate and is not entitled to payment for counsel fees or the services of an attorney. And they allege upon information and belief that the said Will D. McEwen has in his hands as the funds of said estate about the sum of $4,731.90, also one certificate for 250 shares of stock of the Pocahontas Railroad & Improvement Company, one certificate for one share of the capital stock of the Pocahontas Heat, Light & Power Company, one shotgun, and certain books, papers, silver ware, plate ware, jewelry, and surveyor's instruments.

Upon the issues thus joined, the trial court heard the testimony offered pro and con, at the regular March, 1912,

term of the district court, neither party objecting to a trial to the court or demanding a jury, and as a result of that hearing the trial court made the following findings and order:

The report of the said administrator is not a full, true, correct, and complete report. Said administrator has failed, neglected, and refused to fully and correctly report and account for the property and funds of said estate, and has failed, neglected, and refused to administer said estate in accordance with the law and the orders of this court. The court further finds that at the date of the death of said Hiram W. Bissell said Will D. McEwen, who was thereafter appointed administrator of said estate, was the sole owner and proprietor of the City Exchange Bank. The said City Exchange Bank was not a corporation, partnership, or joint-stock company, but that the City Exchange Bank was simply a name assumed by the said McEwen under which he engaged in business as a private banker. Upon the hearing upon said report and the objections thereto, it was made to appear that the said Will D. McEwen was at the time of the death of the said Hiram W. Bissell owing and indebted to the said Bissell in the sum of $4,953.05 for and on account of deposits with the said City Exchange Bank, which amount was then due and owing by the said Will D. McEwen and the same was then due. It further appeared that, subsequent to the death of said Hiram W. Bissell, said McEwen, prior to his appointment as administrator aforesaid, paid the following items. Undertaker's bill for casket and preparing the body of Hiram W. Bissell for shipment, the sum of $140. Express upon the body of said decedent to Pocahontas, Iowa, for burial the sum of $74.15. For preparing grave for the decedent, $7.25. That after deducting the items mentioned in the last preceding paragraph, the said McEwen was owing the said estate on account of the deposits aforesaid the sum of $4,731.65. At the time of making and filing his said report aforesaid, the said Will D. McEwen had in his hands as the property of the said estate the sum of $4,731.65, together with one certificate for 200 shares of the capital stock of the Pocahontas Railroad & Improvement Company and a certificate for one share of the capital stock of the Pocahontas Heat, Light & Power Company and one shotgun. Said administrator, with full knowledge of the possession of said

funds as aforesaid, has commingled the same with his own, used the same in his private business, has failed to make due report thereof as such administrator, and by reason thereof should be charged with the interest thereon at the rate of 6 per cent. per annum from the 1st day of March, 1909. Therefore it is hereby ordered by the court that the said report of the said Will D. McEwen be and the same is hereby disapproved, and the said administrator is hereby charged with and held to account to said estate for the said balance so remaining in his hand, to wit, the sum of $4,731.65, together with interest thereon at the rate of 6 per cent. per annum from March 1, 1909, and for said certificates and the said shotgun above mentioned, and the said Will D. McEwen is ordered to pay said fund forthwith into the hands of the clerk of this court for the benefit of said estate and to surrender to the clerk the other property above mentioned, and the said administrator having tendered his report 'and accounting to the court in probate and having invoked the jurisdiction of said court to pass upon his said report and accounting, with the result above mentioned, and the said Will D. McEwen, as administrator, having removed permanently from said Pocahontas county, and having petitioned the court to relieve him from further duties as such administrator, it is further ordered that, F. W. Linderman being a proper person to act as administrator of said estate, he is hereby named as such administrator, and upon the payment by said Will D. McEwen, administrator, of the said funds into court as aforesaid, he, the said Will D. McEwen, as administrator, shall stand discharged and his bondsmen exonerated, and upon the same being done the said Linderman may qualify as such administrator of said estate with full power and authority to receive from the clerk of said court the funds and property belonging to said estate and shall proceed to the final administration thereof, and the bond of such administrator is hereby fixed at $10,000; and it is further ordered that the costs of this hearing shall await the final disposition of said estate.

The appeal is from these findings and orders of the court. The propositions relied upon are:

First. That the trial court had no right, on these objections, to determine the liability of the administrator upon

any personal indebtedness to the estate, for the reasons: (a) That he was entitled to a jury trial thereon; (b) that the administrator was only required to report money or property coming into his hands as such; and (c) that the individual liability of an administrator to the estate cannot be determined upon objections to his final report and accounting as administrator.

Second. That the trial court was in error in charging him with the sum it did.

I. The administrator, having made his report, which included as a part thereof his own personal liability, and having gone to trial to the court on the issues tendered by the objections, without any objection or demand for a jury, must be deemed to have waived a jury trial. Code, Section 3733; *Davidson v. Wright,* 46 Iowa, 383; *Henny Buggy Co. v. Patt,* 73 Iowa, 485; *Hawkins v. Rice,* 40 Iowa, 435; *Wilkins v. Treynor,* 14 Iowa, 391; *Saum v. Jones County,* 1 G. Greene, 165; *McGuire v. Kemp,* 3 G. Greene, 219; *West v. Fry,* 134 Iowa, 675.

1. ADMINISTRA- TORS: reports: objections: waiver of jury trial.

II. Whatever might be the rule were an administrator simply to list his indebtedness to the estate, which he is to administer, and never reports the same as assets in his hands, we are clear that where, as in this case, he includes his indebtedness in his reports as a part of the assets of the estate, and asks that the amount he claims be fixed as his liability, he cannot after objections are made thereto, and a finding made, that these assets are larger than he claims, be heard to say that the trial court had no power to adjudicate the matters or to do more than find the amount of the claim, leaving the matter of its collection to the will of the administrator. When he introduces the matter into his report as an asset and so treats it, he invites the jurisdiction of the court, and a finding as to the amount with which he should be charged on account of that indebtedness. Such appears to be the uni-

2. SAME: debt due from adminis- trator: juris- diction.

versal holding of the courts. *Savery v. Sypher,* 39 Iowa, 675; *Duffield v. Walden,* 102 Iowa, 676; *Hodge v. Hodge,* .90 Me. 505 (38 Atl. 535, 40 L. R. A. 33, 60 Am. St. Rep. 285), and valuable note collecting cases. Compare *Kaster v. Pierson,* 27 Iowa, 90.

There is no provision of law for the appointment of a special or temporary administrator to collect a claim due from the regular administrator to the estate; neither the heirs, creditors, distributees, or legatees may maintain an action to recover such indebtedness from the regular administrator; and, of course, the administrator cannot sue himself. *Winship v. Bass,* 12 Mass. 199; *Bigelow v. Bigelow,* 4 Ohio, 147 (19 Am. Dec. 591); *Savery v. Sypher, supra.*

For every purpose save one, to which we shall presently advert, debts due by an administrator to the estate he is administering are treated as assets of the estate from the time 3. SAME: assets of their maturity, especially where he has of estate. mixed the funds of the estate with his private property, or reports them as assets in his hands. *Savery v. Sypher, supra; Shields v. O'Dell,* 27 Ohio St. 398; *Baucus v. Stover,* 89 N. Y. 1.

We have no doubt of the power of the court, on any theory which may be adopted, to ascertain the amount of the indebtedness due from the administrator himself to the estate he represents, when he himself brings that into the case and asks the court to find the amount and order his discharge.

III. The matter was in probate and tried to the court without objection, upon the issues joined, and the testimony adduced and the court's finding on disputed questions of fact has the same force and effect as the verdict of a jury. Even considering the testimony of McEwen himself as competent, which we do only for the purposes of this discussion, we are satisfied with the finding of the trial court as to the amount of McEwen's indebtedness.

IV. The real nub of this controversy arises out of that

part of the report, wherein the administrator pleads his insolvency or rather his assignment for the benefit of creditors, on January 3, 1910, something like sixteen months after his appointment as administrator, and his filing a claim with his assignee for the amount of his individual indebtedness. These facts make a rather interesting case in which, of course, the administrator's bondsmen are primarily interested, although not parties save by representation. The matter is fully argued regarding the liability of the administrator, and whether or not he should be charged as such because of the amount of his indebtedness to Bissell before his death. Whatever the amount, it was due on demand, on Bissell's death, and represented an amount of money owing to Bissell as a balance of the purchase price of certain realty, purchased from Bissell shortly before his death.

5. Same: indebtedness of administrator: liability of sureties.

For general purposes this must be treated as part of the assets of the estate, and it will be so treated, unless it appears that at the time of his appointment McEwen was insolvent and had no assets or property which could be used for this purpose. Many courts hold that the amount of the indebtedness of the administrator will be treated as assets in his hands belonging to the estate, from the time of its maturity, be he solvent or insolvent; thus making the sureties on his bond guarantors of his personal indebtedness, and becoming immediately liable for the amount of the indebtedness because of the administrator's insolvency. See, as sustaining this view, the cases already cited from other states, and *Arnold v. Arnold,* 124 Ala. 550 (27 South, 465, 82 Am. St. Rep. 199); *Bassett v. Fidelity Co.,* 184 Mass. 210 (68 N. E. 205, 100 Am. St. Rep. 552); *Tarbell v. Jewett,* 129 Mass. 457; *Crow v. Conant,* 90 Mich. 247 (51 N. W. 450, 30 Am. St. Rep. 427); *McGaughey v. Jacoby,* 54 Ohio St. 487 (44 N. E. 231); *Beall v. Hilliary,* 1 Md. 186 (54 Am. Dec. 649); *Davenport v. Richards,* 16 Conn. 310; *Jacobs v. Morrow,* 21 Neb. 233 (31 N. W. 739); and cases cited in note to

*United Brethren Church v. Akin et al.*, 2 Ann. Cas. 353 et seq. (s. c., 45 Or. 247, 77 Pac. 748, 66 L. R. A. 654).

The better rule, we think, is that, for the purpose of charging the sureties on the administrator's bond, the indebtedness owing by the administrator to the estate should not be regarded as an asset as of the time of its maturity, if at that time and at all subsequent periods he was insolvent and did not have, or could not procure the money. Whilst some of the courts have been inconsistent on this proposition, the following cases seem to hold the doctrine last above announced: *Walker's Estate*, 125 Cal. 242 (57 Pac. 991, 73 Am. St. Rep. 40); *State v. Gregory*, 119 Ind. 503 (22 N. E. 1); *Buckel v. Smith* (Ky.) 82 S. W. 235, 1001; *Potter v. Titcomb*, 7 Me. (7 Greenl.) 302; *Linthicum v. Polk*, 93 Md. 84 (48 Atl. 842); Compare *Lambrecht v. State*, 57 Md. 240; *Sanders v. Dodge*, 140 Mich. 236 (103 N. W. 597, 112 Am. St. Rep. 399); *McCarty v. Frazer*, 62 Mo. 263; *Howell v. Anderson*, 66 Neb. 575 (92 N. W. 760, 61 L. R. A. 313); *Harker v. Irick*, 10 N. J. Eq. 269; *Baucus v. Barr*, 45 Hun. (N. Y.) 582 (affirmed in 107 N. Y. 624, 13 N. E. 939); *Matter of Piper*, 15 Pa. 533; *Rader v. Yeargin*, 85 Tenn. 486 ( 3 S. W. 178); *Lyon v. Osgood*, 58 Vt. 707 (7 Atl. 5); *Sanchez v. Forster*, 133 Cal. 614 (65 Pac. 1077).

While the sureties on an administrator's bond do not guarantee his solvency or ability to pay his own debt to the estate, yet as he holds the matter in his own hands and at the time of the maturity of his debt, or afterward, becomes solvent, he is expected to do his duty and to set apart for the estate of which he is trustee, the amount of his indebtedness. *Condit v. Winslow*, 106 Ind. 142 (5 N. E. 751); *Matter of Piper, supra; Rader v. Yeargin, supra; Probate Court v. Merriam*, 8 Vt. 234.

In *Gay v. Grant*, 101 N. C. 206 (8 S. E. 99, 106), it was held that the sureties were liable where the administrator was able to pay his debt, but was insolvent in that his property was not subject to legal process.

This whole matter was thoroughly considered in *In re Howell,* 66 Neb. 575 (92 N. W. 760, 61 L. R. A. 313), and with the report of the case in the latter volume is printed a learned opinion by the trial judge. This opinion adopts the rule of the Indiana and other courts, which is as follows:

'One question which seems to have been overlooked on the trial of the cause was the financial condition of Levin T. Miller, the administrator, during the period of his administration. The money collected by him while professing to act as agent of the administrator in Missouri, and for which he had not accounted when he became administrator, was a claim in favor of his trust, which he should have inventoried and charged himself with; and if, by the use of due diligence, all or any part of the claim could have been saved to the estate, his sureties are therewith chargeable; but, if he was hopelessly insolvent, they do not become liable therefor, the burden as to the question of insolvency being on the administrator and his sureties.' Further on in the opinion the court says: 'The debt of the administrator is to be accounted for as other debts or assets, and he may show his insolvency during the period of his administration in discharge of his official liability'—citing Woerner, Am. Law of Administration, page 654, section 311; *Griffith v. Chew,* 8 Serg. & R. (Pa.) 17 (11 Am. Dec. 556); *Eichelberger v. Morris,* 6 Watts, 42; *Tarbell v. Jewett,* 129 Mass. 457; *McCarty v. Frazer,* 62 Mo. 263. . . . It is a well-established rule of law, running back even before the Revolution, that an executor or administrator is considered as having paid the debts due from him to the estate, and as actually having in his possession that much more cash. If the personal representative is insolvent, the courts, in the interests of all concerned, modify this rule somewhat. He still charges himself with the amount of his debt, but it does not make it actually money. The law does not require impossibilities, and there is no more reason why he should be considered as having paid what he was utterly unable to pay, than any other creditor. He is held liable to the estate to the extent of his ability to pay the same at any time during administration.

This appears to us to be the reasonable rule, and it was foreshadowed in *Kaster v. Pierson,* 27 Iowa, 90-95, although

what is there said is perhaps dictum.  We adopt the rule of
the Indiana and Nebraska courts, and as
stated by some of the text-writers, as the logi-
cal and reasonable one.  Applying it to the
facts in this case, it will be observed that the debt from the
administrator was due on demand, and it was his duty to
pay or account for it if he were able, upon his appointment
as administrator.  As a matter of fact he inventoried the
claim as a deposit in his bank on October 26, 1908.  He did
not report within a year, as was his duty, and did nothing
in this regard until ordered by the court to act, and then
filed a report showing money in his bank and a personal in-
debtedness to the estate on May 26, 1910.  This report was
not approved, and no report made by him has ever secured an
approval by the court.

6. SAME: indebt-
edness of ad-
ministrator:
assets.

Without keeping any separate funds in his bank for the
estate, he continued to conduct his bank in the usual man-
ner, so far as shown, down to the time he made his assign-
ment for the benefit of creditors, in January of the year 1910,
something like sixteen months after his appointment as ad-
ministrator.  Until that assignment was made, his bank was
a going concern, and there is no proof of his insolvency be-
fore that time.  By reason of his trusteeship, he was under
greater obligations to pay this debt than any other which was
not of the same character, or to set aside enough of his funds
to do so.  This he did not do, but on the contrary mingled
all the funds in his bank, and made no charge even against
himself as a debtor, to the estate, or in any other manner
segregated the funds.  So long as his bank was a going con-
cern, it was, as we think, his duty to do this, and he was not
relieved because of the fact that it might make him insolvent.

Surely within the year for paying claims he should have
given himself credit for the amount of his indebtedness to the
estate, just the same as it was his duty to collect any other
debt due from a third person.  If to his knowledge such a
third person was running behind and likely to become in-

solvent, he would be held to a speedy collection of the claim before that calamity would happen. So in his own case, he knew, of course, of his failing condition, and as a representative of the estate it was his duty to act upon this knowledge and save this amount to the estate before protecting ordinary creditors. Upon this last proposition we have given the administrator the benefit of every doubt, and assumed in his favor that certain statements made only in briefs of counsel are correct, and as a result we are of opinion that the findings and orders of the trial court are correct, and that the settlement made with the administrator is binding.

The orders and judgment are, therefore—*Affirmed.*

LADD, C. J. and GAYNOR and WITHROW, JJ., concurring.