FLOYD COUNTY, Appellee, v. ROBERT RAMSAY et al., Defendants.

W. C. SMITH, Cross-petitioner, v. ROBERT L. LEACH, Receiver, et al., Defendants; R. E. LYNN et al., Appellants.

No. 40260.

APRIL 14, 1930.

REHEARING DENIED OCTOBER 14, 1930.

*Willoughby, Strack & Sieverding* and *Mears, Lovejoy, Jensen & Gwynne,* for appellants.

*J. C. Campbell* and *E. C. Hardwig,* for plaintiff, appellee.

*R. W. Zastrow,* for Receiver.

*Senneff, Bliss, Witwer & Senneff* and *T. A. Beardmore,* for W. C. Smith.

*H. L. Lockwood,* for L. W. Inman, appellee.

STEVENS, J.—I. Prior to January 23, 1923, the Farmers Trust & Savings Bank of Marble Rock, Iowa, was designated by the defendant Robert Ramsay, county treasurer, as a depositary of public funds, with the approval of the board of supervisors of Floyd County. On the above date, a bond was executed, in the penal sum of $30,000, to the said Floyd County and Ramsay, as county treasurer, and was signed by the defendants W. C. Smith, L. W. Inman, and R. E. Lynn. Sums were, from time to time, deposited in the said bank by the county treasurer.

On or about May 7, 1924, W. C. Smith notified the county treasurer that he desired to withdraw from the bond and to be relieved from all further liability as surety thereon. Thereupon, the county treasurer demanded of the bank a new bond, and notified its officers that no further deposits would be made until such new bond, in the penal sum of $20,000, was furnished, with suitable sureties. The occasion for the desired withdrawal of Smith as surety from the bond was that he had retired from the bank, both as a stockholder and an officer, and had been succeeded by the appellants H. A. and J. F. Lynn, brother and father, respectively, of R. E. Lynn. It is claimed by Smith that it was part of the arrangement and agreement made with R. E. Lynn, at the time he retired from the bank, that Smith was to be released from all further liability on the bond. On September 20, 1924, a new bond in the penal sum of $20,000, signed by L. W. Inman, H. A. Lynn, J. F. Lynn, and R. E. Lynn, was filed in the office of the county auditor. This bond was promptly accepted and approved by the county treasurer. It was not, however, affirmatively approved by the board of supervisors. We will refer again a little later to the status of this bond.

The bank becoming insolvent, its affairs were taken in charge by the superintendent of banking, as receiver. At the time the bank closed, it was indebted for public revenues to the

county treasurer and Floyd County in the sum of $14,637.29. As originally commenced, the county, in this action, sought recovery only against the sureties on the old, or $30,000, bond. Indeed, no recovery was sought on the $20,000 bond until after the cause had been fully tried and submitted to the court and was being held under advisement, pending final decision. W. C. Smith, in due time, filed answer and cross-petition to the petition, alleging the sale of his stock in the bank and his retirement therefrom as an officer; that, at the time of his retirement, on or about April 19, 1924, it was specifically understood and agreed with R. E. Lynn that he should be released from liability on the bond signed by him; and that a new bond, in the penal sum of $20,000, had already been filed as a substitute bond. He denied liability to the county in any amount. A copy of the new $20,000 bond was attached to the cross-petition.

The Lynns answered the cross-petition, in substance denying all of the allegations thereof upon which cross-petitioner claimed to have been released from liability on the bond. After the cause had been fully submitted, and was being held by the court, pending final decision, Floyd County, without specific leave of court, filed a petition in intervention, setting up a cause of action against the sureties on the new, or $20,000, bond. This was the first demand made by the county upon this instrument. The petition alleged the execution and acceptance of the bond; that the total amount, $12,656.45, was deposited in reliance thereon; and that, but for the execution of such bond, no funds would have been so deposited. Intervener further alleged that the sureties on this bond, who had already been made parties to the action by the cross-petitioner, were, by reason of the facts stated above, fully estopped from denying liability thereon. The court found that W. C. Smith had legally withdrawn as surety on the bond, but that he was liable for the balance due from the bank at the time of his withdrawal, in the sum of $1,246.16, for which judgment was entered against him. It was stated by counsel in oral argument that this part of the judgment has been paid. Judgment was rendered against R. E. Lynn and L. W. Inman, who were sureties on both bonds, and H. A. and J. F. Lynn, sureties only on the new, or $20,000, bond, in the sum of $11,845.36, the balance due on deposit when the bank closed.

The main contention of appellants is, as already stated, that the $20,000 bond was never accepted or approved by the board of supervisors. This presents the only troublesome question in the case. As stated, the county treasurer approved the bond, and sent it to the board of supervisors for final approval. When the board met, the bond was discussed, but was neither affirmatively approved nor rejected. The chairman of the board started to write his signature thereon, approving the instrument, but, after some further discussion and consideration, erased it. Two questions appear to have come up during the consideration of the bond by the board. H. A. and J. F. Lynn were non-residents of Floyd County, and the board was not advised as to their financial responsibility. The board was also uncertain as to what effect the approval of the new bond might have upon the old or original bond. From this point the matter was permitted to drag along without further action of any kind by the board. So far as any question of fact was involved in the case, the finding of the trial court is conclusive thereon. The court, it may be assumed, declined to find that the new bond was, in fact, rejected by the board, as claimed by appellants. A fair interpretation of the evidence at this point shows substantially as we have stated. It will be remembered that the appellee bank was, prior to and at the time of the execution of the new bond, a duly accepted and authorized depositary of the county's funds. It seems to us that the question at this point is: Was the bond a nullity because not technically approved by the board of supervisors?

The record shows without controversy that the county treasurer informed the bank that no further taxes could be received by it, and that no further deposits would be made until the new bond was executed. It is equally conclusive that the larger amount, for which judgment was entered, which represented the balance of the county's deposits in the bank made by the treasurer after the new bond was executed, was deposited in sole reliance thereon. This fact was as well known to the officers of the bank as to the treasurer, who had consistently refused to deposit in the bank or permit it to receive the payment of taxes from taxpayers until the new bond was given. Both Inman and R. E. Lynn were liable on the old bond, to the same extent at least as Smith. It was not necessary for the trial

court, nor is it necessary for this court, in the decision of the question under discussion, to hold that the new bond was a substitute for the old one. The legal liability, in our judgment, is the same, under the facts stated. If it were intended by the parties that the new bond was not to be treated as a substitute, the liability of the old sureties would be the same. We shall, therefore, dispose of the case without reference to the question as to whether the bond is a substitute or an additional bond.

It is urgently contended by appellants that the bond is a nullity because not accepted and approved by the board of supervisors. It was accepted by the county treasurer and approved by him. Under the statute, the county treasurer, by and with the approval of the board of supervisors in the respective counties of the state, designates the banks that are to become public depositaries. However, the statute requires that the bond be in double the amount of the maximum of deposits permitted, and with sureties to be approved both by the treasurer and the board of supervisors. Sections 7404, 7405, Code, 1924. Whatever status may be given the $20,000 bond, the deposits made by the treasurer in the bank after its execution were, nevertheless, legal, as the treasurer could not alone eliminate the bond approved by the board of supervisors. This being true, the failure of the board of supervisors to approve the new bond does not go to the question of the propriety or impropriety of the action of the county treasurer in making the deposits here involved. H. A. and J. F. Lynn are sureties only on the new bond. The obvious and unquestioned purpose of the bank in the execution of the new bond was to induce the treasurer to make further deposits in the bank. All of the sureties signing the bond were interested in the bank, as stockholders and directors. There is nothing in the statute which in any way prohibited the treasurer from demanding and receiving additional security for deposits to be made in the bank. The requirement of the statute that a bond be given by public depositaries and approved by the treasurer and the board of supervisors is for the public good. It is the public welfare that is to be conserved. *Leach v. Stockport Sav. Bank,* 207 Iowa 478. This fact is obvious. The bond in question, perhaps, meets the requirements of the statute as a statutory bond. No reference is, however, made

therein to the designation of the bank as a depositary, except in the following language:

"It is further understood and agreed that any and all irregularities, defects and omissions on the part of the board of supervisors of the said county in passing any resolution designating any bank or banks as depositories of public moneys shall not invalidate this obligation or affect the liability of the obligors named herein."

Whether the bond, if it did not acquire proper status as a statutory bond, may be treated as a common-law obligation, suggests a distinction probably unnecessary to make. Whatever it may be called, it was intended to serve a definite purpose, and that purpose was served, to the enrichment of the principal and the sureties on the bond. It served the same identical purpose it would have served if the approval of the board of supervisors had been written thereon. In a few states, bonds of this character are denominated official bonds. They are given by public agencies. We have not so designated them in this state. This court has held that the failure of the proper official to approve an official bond does not affect its validity. *Moore v. McKinley,* 60 Iowa 367; *Boone County v. Jones,* 54 Iowa 699. A case here in point on principle is *Richards v. Osceola Bank,* 79 Iowa 707. In that case, it appeared that the depositary bank gave the county treasurer additional security in the form of notes, stocks, and other securities, in a sum amounting to $9,000, which was collected. The court, in an action against the sureties on the bond, held that proper credit should be made thereon of the amount received, and, in the course of the opinion, said:

"V. The second point is as follows: '2. The county treasurer (plaintiff) had no legal right to accept the same as security for the funds deposited in said bank, either as a protection to himself and bondsmen, or as additional security to the county.' It is quite as readily disposed of as the first. It cannot be doubted that, in the absence of any statutory prohibition, the county treasurer was authorized to demand and recover from the bank the money due the county. Surely, if he had such authority, he could accept security from the bank for its indebtedness. It would be strange, indeed, if any law existed prohibiting the county treasurer, the financial officer of

the county charged with the duty of collecting the debt owed by the bank, from accepting security where, in his judgment, it is demanded. It would be an absurd rule forbidding the county treasurer, in the discharge of his duty, to do an act for the protection of the county when his judgment, as a faithful officer, directed it. The statute (Code, Sec. 912) providing for security by bond to be given by a bank before deposits of county money are made therein does not forbid the county treasurer to take other security if, in his judgment, it is demanded. Other creditors of the bank cannot complain, for the notes were taken in the exercise of the undoubted right of a creditor, in the exercise of diligence, to secure his claim by taking collateral security of this character."

Surely, the sureties on a new bond may not be heard to say, in defense against their solemn obligation, that the bond was a nullity because it was not indorsed with the approval of the board of supervisors. The obligation of the instrument was to save and keep the treasurer harmless from any loss on account of the deposits made. They were made by the county treasurer in reliance upon the new bond, and were accepted by the bank with full knowledge of that fact.

Some reliance is placed by counsel for appellant upon *Fremont County v. Fremont County Bank*, 138 Iowa 167. This case is not in point. As having some bearing, however, on the question here involved, see the following: *Maryland Cas. Co. v. Pacific County*, 245 Fed. 831; *Buhl Highway Dist. v. Allred*, 41 Ida. 54 (238 Pac. 298); *Henry County v. Salmon*, 201 Mo. 136 (100 S. W. 20).

II. Complaint is made by appellant of the consideration by the court of the petition in intervention filed by the county. It is urged that the petition was filed too late after submission of the cause, and that appellants were not given an opportunity to offer additional testimony. The petition was not assailed by motion to strike or otherwise, except the allegation in the answer that it was filed too late. The petition was filed and submitted upon the evidence already introduced. So far as the record shows, every question of fact involved in the petition of intervention was introduced in evidence and tried out on the cross-petition of W. C. Smith. As stated, Smith was claiming that he had been released from liability by having withdrawn as

surety from the bond, and by his agreement with the Lynns at the time he sold his bank stock to them. Apparently, the facts were all before the court. Appellants have not suggested anything to indicate that a reopening of the case would have benefited them in the least. · It was conducive to the interest of all parties that the entire controversy be settled in the one action. It is true that the petition in intervention was not on file at the time the jury was waived; but, if appellants had deemed themselves prejudiced by .the filing and consideration of the petition in intervention, because of that fact, they should have in some way indicated it by a motion to strike, or by request to introduce further testimony, or for a jury trial on issues tendered. We think that by answering the petition and failing and neglecting to raise any question as to the filing of the petition in intervention all informalities and irregularities in that regard were waived.

It is also argued by appellants that the new bond could be given validity only by its acceptance. and approval by the board of supervisors; that until then it was a mere proposal. As appears from the excerpt quoted from the bond, by its terms it waived many informalities so far as the board of supervisors was concerned. It did not waive acceptance and approval, nor could it do so. As stated, the requirement that the bond given as a part of the things to be done .originally to qualify the bank as a public depositary be approved by the county treasurer and board is for the good of the public, and not the bank. Whether the instrument be denominated a common-law bond or not, appellants are in no position, under the facts of this case, to demand release from liability because it was not technically approved by the board. The act of the county treasurer in demanding and receiving the additional bond was not illegal, the relationship between the county and the bank having already been established and consummated by the execution of the old, or $30,000, bond.

It seems to us that the judgment of the court below is right, and should be upheld. Without further discussion, the judgment is affirmed.—*Affirmed.*

MORLING, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.