IN RE ESTATE OF ALFRED S. KENDRICK.

ARTHUR STOOKESBERRY, Administrator, Appellee, v. W. P. CALDWELL, Special Administrator, et al., Appellants.

No. 41308.

JUNE 24, 1932.

874

Stipp, Perry, Bannister & Starzinger, Donald D. Holdoegel, and H. C. & H. C. Taylor, for appellants.

Chester W. Whitmore and Buell McCash, for appellee.

FAVILLE, J.—One Kendrick, the decedent whose estate is involved in this litigation, was a resident of Davis County, Iowa. He never married, and during the course of his life accumulated a considerable amount of property. In January, 1922, at a time when he was past 69 years of age, Kendrick made application to the court for the appointment of a guardian of his property and the appellant Caldwell was appointed as such guardian and gave bond as required by statute. Caldwell entered upon his duties as guardian and shortly thereafter collected in cash an amount in excess of $11,000. This money was deposited by the guardian on open account in the Bank of Drakesville. This bank was a private institution owned by three partners and had a capital of $6,000. Caldwell, the guardian, owned a one-third interest in said bank, and the other two-thirds interest was owned by H. C. Taylor and Heinrich Taylor. The situation regarding said deposit continued for a number of years.

In time Kendrick was sent to a state hospital for the insane and died there on February 13, 1930. He was survived by a brother, a sister, and a number of nieces and nephews. Shortly after the death of Kendrick, to wit, on February 18, 1930, the appellant Caldwell, who had been guardian of Kendrick, applied to the court for his appointment as special administrator of Kendrick's estate, and he was so appointed and qualified as such special administrator, and gave his special administrator's bond in the sum of $35,000, signed by the appellant Fidelity

and Deposit Company of Maryland as surety. This bond was duly approved. Thereafter, in April 1930, Caldwell filed his final report as guardian of Kendrick, showing therein that he had in his hands as said guardian on deposit in the said Bank of Drakesville the sum of $11636.44. At said time Caldwell, as special administrator, executed a receipt to himself as guardian for the said sum of money. Caldwell as special administrator included said sum of $11636.44 in his inventory of the assets of the estate of said decedent which he filed as special administrator, as being in said Bank of Drakesville. Thereafter, to wit, on April 24, 1930, an order was entered in said court directing that all funds in the hands of the special administrator in said estate should be deposited in the State Bank of Davis County, Iowa. This order was not complied with by the special administrator Caldwell, nor was there any attempt on his part so to do.

On July 19, 1930, said Bank of Drakesville made an assignment for the benefit of creditors and an assignee was duly appointed. In September, 1930, a sister of the decedent filed charges against Caldwell as special administrator, and asked his removal as such, and upon a hearing it was ordered that he be removed. Caldwell, as special administrator, filed his final report in said matter. At or about said time, the appellee Stookesberry, having been appointed special administrator of said estate, filed objections to the said final report of Caldwell as special administrator, and a motion was filed for judgment against the appellant surety company on said bond for the amount due from Caldwell as special administrator of the estate of the decedent. Issues were joined and a trial had to the court, which resulted in a judgment against Caldwell and the appellant surety company on its bond for the amount ascertained to be due from said Caldwell to the estate of the decedent, being the balance of said deposit.

The ultimate question for determination in this case is whether or not the surety on the bond of Caldwell as special administrator can be held liable for the funds that originally belonged to the said Kendrick and that came into the hands of Caldwell as guardian and for which he receipted as special administrator and reported that he had on hand in the bank.

Caldwell joins in the appeal but he makes no serious con-

tention that he is not liable for the Kendrick funds. It appears that he is insolvent and that he is quite indifferent to the entry of judgment against him.

The real fight is between the present special administrator and the surety company.

Of course, there can be no question in this case in regard to the liability of Caldwell as *guardian* of Kendrick. He received the funds in the first instance as guardian and deposited them in the bank while acting as guardian. But the question here is as to the liability of the surety on his bond as *special administrator*, not as guardian. It is the contention of the appellants that the funds in question never came into the hands of Caldwell as special administrator, and that Caldwell and the Bank of Drakesville in which the funds were deposited by Caldwell as guardian were both insolvent at the time Caldwell was appointed special administrator, and at all times thereafter. Notwithstanding the receipt given by Caldwell as special administrator, reciting that he had received said funds from himself as guardian of Kendrick, and notwithstanding the inventory and report which he made as special administrator, reciting the receipt of said funds and that he held the same as such special administrator, it is the contention of the appellants that Caldwell did not in fact receive said funds as special administrator and that the surety on the special administrator's bond can not be held liable.

A great amount of evidence was introduced in the record with regard to the condition of said bank at the time of the appointment of Caldwell as special administrator, and thereafter until it was closed and an assignee appointed therefor. After Kendrick's death and the appointment of Caldwell as special administrator, there was practically no change in the account representing the funds of said estate in the Bank of Drakesville except the premium for the bond of the surety company was charged thereto. Caldwell was not only a part owner, but he was the cashier and managing officer of the bank, and was fully advised at all times of the condition of said account and also of the condition of said bank. Not only this, but the attorney-in-fact who executed the surety bond was also fully advised of the situation at the time he executed said bond. With full knowledge of the exact situation Caldwell assumed the

duties of special administrator, receipted for the funds in the bank as having been paid to him in cash, reported to the court that he had received said funds and held them on deposit in the bank as special administrator and charged himself therewith. The attorney-in-fact for the surety company was also a partner in said bank and acted as attorney for Caldwell as special administrator, and was fully advised of the entire situation.

Can it now be said by the special administrator and the surety company that in the light of said facts no funds passed into the hands of the special administrator because the bank was insolvent at the time of the appointment of the special administrator?

Suppose that one interested in the estate had made an investigation of the condition of the estate at the time. He would have found that the special administrator had reported under oath that he had on hand $11636.44, which funds he had then on deposit in the Bank of Drakesville, and which the court had ordered the special administrator to deposit in another bank. He would have also found the bond of the surety company conditioned that said special administrator "shall discharge all the duties which are or may hereafter be required of him by law as such administrator."

Without determining whether or not, under the record in this case, there is an estoppel established, we pass to a consideration of the appellants' claim of non-liability because of the alleged insolvency of the bank. No useful purpose would be gained by our attempting to set out in detail the mass of testimony with regard to the condition of the bank during the time in question. It is to be noted that when the money of the estate was deposited in the bank the title thereto passed to the bank. What Caldwell received as special administrator was in fact a claim against the Bank of Drakesville for the amount of money that had been deposited in the bank by Caldwell as guardian. Under the record was it possible for Caldwell as special administrator to realize on this claim, and was it his duty so to do? The court especially ordered him to deposit the funds of the estate in another bank. This it was his bounden duty to do. After the appointment of Caldwell as special administrator the bank continued to operate as a going concern. It received deposits and borrowed money and had on hand bills receivable,

many of which had value. It is contended by the appellants that if Caldwell as special administrator on the day of his appointment as such had presented a check to said bank for the funds belonging to the Kendrick estate, payment would have been refused and the inevitable result would have been that the bank would have then closed and that all the special administrator could have received would have been a small fraction of the amount of the Kendrick funds, in any event no more than the cash then on hand in the bank. But the special administrator and his bondsman can not be exonerated from all liability on this theory. Caldwell as special administrator was under a constantly continuing duty to obey the order of the court and get said funds out of the Bank of Drakesville and deposit them in another bank. It is to be remembered also that Caldwell was not a stranger to the situation so far as the deposit in the Bank of Drakesville is concerned. He was the managing officer of the bank and all funds therein were at all times under his control. It was the paramount duty of the special administrator to obey the order of the court and to withdraw from said bank the cash that came into said bank at any time after his appointment as special administrator for the purpose of transferring said fund as directed by the court. It was within the power of the special administrator to do so. This he wholly neglected to do. It is not a sufficient answer for the special administrator to say that to have withdrawn the cash that came into the bank after his appointment as special administrator would have resulted in the closing of said bank. Caldwell, it is true, was placed in a situation where he was compelled to play a dual role. He was cashier of the Bank of Drakesville and had a personal and financial interest in keeping said bank open and a going concern. On the other hand he owed a superior duty to protect the funds of the estate of which he was special administrator, and to obey the orders of the court in respect thereto. Even if it be true, as testified to by the attorney-in-fact for the surety company, that to have withdrawn the Kendrick funds would have resulted in closing the bank, this would not excuse the special administrator from performance of his duty as such special administrator. We are abundantly satisfied from the record that the bank had sufficient cash coming into its possession after Caldwell's appointment as special administrator and

before the bank closed to have made it possible for Caldwell to transfer the full amount of the Kendrick funds to the State Bank as ordered by the court. The bank owned such cash as came into its possession from time to time and it was Caldwell's duty to withdraw such an amount of cash as was due the Kendrick Estate and deposit it as ordered by the court. His first and foremost duty lay there. He ignored it and disobeyed the order of the court in this regard. For such default he and his bondsman must be held liable.

We considered a somewhat similar situation in McEwen v. Fletcher, 164 Iowa 517, where the administrator of an estate inventoried his own indebtedness to the estate as a fund on deposit in the bank which the administrator owned and operated. In that case there was no order of court directing the administrator to deposit the funds in another bank, as in the case at bar. We said:

"By reason of his trusteeship, he was under greater obligations to pay this debt than any other which was not of the same character, or to set aside enough of his funds to do so. This he did not do, but on the contrary mingled all the funds in his bank, and made no charge even against himself as a debtor, to the estate, or in any other manner segregated the funds. So long as his bank was a going concern, it was, as we think, his duty to do this, and he was not relieved because of the fact that it might make him insolvent. Surely within the year for paying claims he should have given himself credit for the amount of his indebtedness to the estate, just the same as it was his duty to collect any other debt due from a third person. If to his knowledge such a third person was running behind and likely to become insolvent, he would be held to a speedy collection of the claim before that calamity would happen. So in his own case, he knew, of course, of his failing condition, and as a representative of the estate it was his duty to act upon this knowledge and save this amount to the estate before protecting ordinary creditors."

In the case at bar the special administrator made no attempt whatever to comply with the order of the court. To say the least, he was negligent in not withdrawing the funds that

were available during his term as special administrator, and for such negligence he and his bondsman are liable.

In Bookhart v. Younglove, 207 Iowa 800, we said:

"Another contention of the appellants' is that Younglove, as executor, deposited the funds in the Farmers Bank of Lawton, in his name as executor of said estate, and that he did so in good faith, without negligence, and that they are not liable therefor because of any subsequent insolvency of the bank. This is a well recognized rule of law. See Officer v. Officer, 120 Iowa 389; Hunt v. Hopley, 120 Iowa 695; In re Estate of Workman, 196 Iowa 1108; Leach v. Beazley, 201 Iowa 337; In re Estate of Ring, 132 Iowa 216; Incorporated Town of Conway v. Conway, 190 Iowa 563; School Township v. Stevens, 158 Iowa 119. But this rule of law cannot be invoked by an executor who is one of the partners owning an interest in a private bank. The act of Younglove in depositing the money in the private bank in which he was the owner of approximately a one-half interest was equivalent to his taking the money out of one of his pockets and putting it into another; and we hold that, under such circumstances, the depositing of the money in this bank, regardless of his good faith, and regardless of the care exercised, was no protection to him or to the sureties on his bond, for the money so deposited."

The case has been most carefully and thoroughly presented by counsel for the respective parties, covering every possible angle of the questions involved. We do not deem it necessary to extend the discussion. We concur in the conclusion of the trial court that under the facts shown in the record and the rules of law applicable thereto the special administrator and his bondsman are liable for the funds in question.

The appellee's motion to dismiss the appeal, which was ordered submitted with the case, is overruled.

In attempting to comply with that part of the Rule 18 pertaining to an index, the appellants have prepared twelve closely printed pages, and the appellee has filed an additional abstract with thirty-eight pages of an index, making a grand total of fifty pages of indices of the record. Without any alphabetical order therein it is quite as difficult to find any specific portion of the record by referring to the index as it is to search the abstract

itself. Such exhaustive indices are not contemplated by the rule. The subject-matter of the testimony of a witness may be very briefly and tersely stated in an index without any attempt to cover the details of his evidence. This is said not by way of criticism of the record in the instant case, but in the hope that it may aid the bar generally in the preparation of indices to abstracts.

The order and judgment of the district court is affirmed.— Affirmed.

All justices concur.