BELMOND CEMETERY ASSOCIATION, Plaintiff, Appellee, v. A. L. LUICK et al., Defendants, Appellants.

.No. 42017.

MARCH 13, 1934.

Birdsall, McGrath & Archerd, and Stowe & Kirchner, for appellants W. C. Tyrrell and R. E. Courson.

Sylvester Flynn, for appellee.

KINTZINGER, J.—The record in this case shows that the trusteeship involved originated in 1916. It is claimed by appellant that it was created under the provisions of chapter 446 of the Code relating to cemetery funds. A. L. Luick was at that time appointed trustee and his bond fixed by the court in the sum of $2,500. The object and purpose of his appointment was to receive, manage, and invest funds received by the cemetery association *for the perpetual care of cemetery lots.* All funds coming into his hands when first appointed, and all funds later received by him, consisted of moneys paid in for perpetual care of certain lots in the cemetery. The original bond was for $2,500 and continued in that amount until 1928. At that time the funds in the hands of the trustee exceeded the amount of the original bond, and the court increased the bond to $10,000. This bond was signed by the trustee as principal, and by the defendants Tyrrell and Courson, as sureties. The bond provides as follows:

"Know All Men By These Presents:

"That we, A. L. Luick, as principal, and W. C. Tyrrell and R. E. Courson, as sureties, of the County of Wright, and State of Iowa, are held and firmly bound unto the Belmond, Iowa, Cemetery Association, in the penal sum of Ten Thousand ($10,000.00) Dollars, lawful money of the United States, for the payment of which we bind ourselves, our heirs, executors, and administrators.

"The condition of the above obligation is that the above bounden, A. L. Luick, is the duly appointed Trustee of the Bel-

mond, Iowa, Cemetery Association Perpetual Fund; that as said Trustee he will render a true account of his office, and of his doings therein, to proper authorities when required thereby or by law; that he will promptly pay over all monies which may come into his hand by virtue of said office; that he will promptly account for all balances of money or bonds remaining in his hands at the termination of his office; that he will exercise all reasonable diligence, and care, in the preservation and lawful disposal of all monies, books, papers, securities or other property appertaining to said office, and deliver them to his successors, or to any other person authorized to receive the same *and the sureties on such bonds shall be liable for all money or property that may come into the hands of such Trustee at any time during his tenure as Trustee* of the Funds of the Belmond, Iowa, Cemetery Association, then this Bond to be void. otherwise in full force.

"Signed this 20 day of November, A. D. 1928.

"A. L. Luick, Principal.

"W. C. Tyrrell,

"R. E. Courson,

"Sureties."

The evidence shows without conflict that this bond was furnished for the protection of funds in the hands of the trustee, received for perpetual care of lots and graves in the plaintiff cemetery. No other funds were in his hands at the time of his appointment, and no funds from any other source were ever received by him later.

Prior to 1928 the trustee was an officer of the State Bank of Belmond, and all funds received by him as trustee were deposited in the savings account of this bank. Mr. Tyrrell and Courson were both officers of the bank after 1928.

These funds were all deposited in the bank without the authority of any court order, and contrary to the Iowa statutes relating to the investment of funds in the hands of a trustee. On July 21, 1931, the bank became insolvent, closed its doors, and went into the hands of the receiver. The lower court found that such funds are now lost by reason of the wrongful acts of the trustee, in depositing the funds in question in the bank contrary to and in violation of the law. They were deposited in violation of section 10202, relating to cemetery funds and also in violation of section 12772, relating to

the investment of funds by an ordinary trustee. Code, section 10202 provides:

"Any such trustee shall loan all moneys received by him, under the direction and with the approval of the court, but only as same may be secured by first mortgage upon Iowa real estate, and no loan shall be made or approved, unless it be made to appear upon oath of three disinterested citizens that such real estate is worth at least double the amount of the loan applied for."

Code, section 12772 provides:

"All proposed investments of trust funds by fiduciaries shall first be reported to the court or a judge for approval and be approved and unless otherwise authorized or directed by the court under authority of which he or it acts, or by the will, trust agreement or other document which is the source of authority, a trustee, executor, administrator or guardian shall invest all moneys received by such fiduciary * * * in securities * * * in one or more of the following classes: 1. Federal bonds. 2. Federal land bank bonds. 3. State bonds. 4. Municipal bonds. 5. Real estate mortgage bonds. 6. Corporate mortgages. 7. Railroad bonds. 8. Bonds guaranteed by railroad. 9. Public utility bonds." (Specific description of securities omitted.)

The trust funds were carried in the bank account from 1916 to 1931, and deposited with the knowledge and consent of the sureties on the bond. They knew that the fund, for which he gave the bond, was created entirely from moneys received for perpetual care of the cemetery lots, *and from no other source.* They cannot and do not say that the bond was not given for the purpose of securing and protecting the moneys so received. It is the settled law of this state that the sureties on a bond are liable for deposits made by a trustee wrongfully and in violation of law. Andrew v. Farmers Sav. Bank, 207 Iowa 394, 223 N. W. 249; Kowalke v. Evernham, 210 Iowa 1270, 232 N. W. 670; In re Kendrick's Estate, 214 Iowa 873, 243 N. W. 168; McEwen v. Fletcher, 164 Iowa 517, 146 N. W. 1, Ann. Cas. 1916D 631; Boone Co. v. Jones, 54 Iowa 699, 2 N. W. 987, 7 N. W. 155, 37 Am. Rep. 229; Floyd County v. Ramsay, 210 Iowa 1161, 230 N. W. 404; Greene County v. City Bank of Jefferson, 196 Iowa 1164, 195 N. W. 3, 196 N. W. 94; Cronk v. Am. Surety

Co., 208 Iowa 267, 225 N. W. 454; Scott v. Lakewood Cem. Assn., 167 Minn. 223, 208 N. W. 811, 47 A. L. R. 64.

Appellant contends, however, that the funds received by the trustee were not "donated"; that the bond in question was given only to secure "donations"; and that the statutory obligations of the bond provided for under sections 10204 and 10198 relate only to funds "*donated*" to a cemetery. Appellants claim that the funds received by the association to provide "perpetual care" of cemetery lots from the earning of such funds, cannot be considered "donations" within the contemplation of section 10198, and therefore are not covered by the bond. The facts in this case conclusively show that the very object and purpose of the bond was for the protection of the very funds received by the trustee *for perpetual care of certain cemetery lots*. The primary purpose of appointing the trustee was to secure such funds.

It must be conceded that the terms of the bond secured *all* funds received by the trustee. It is contended that the bond required by section 10204 of chapter 446 is a statutory bond and must be strictly limited to the protection only of "donations" as provided in section 10198, and cannot be enforced as a common-law obligation.

Conceding for the purpose of this contention (without admitting it) that the funds received by the trustee could not be considered donations or gifts, still, under prior holdings of this court, the bond in question may still be enforced as a common-law obligation. Among the cases relied upon by appellant in support of their contention is United States F. & G. Co. v. Iowa Telephone Co., 174 Iowa 476, 156 N. W. 727. That case and others cited are clearly distinguishable from the case at bar. In that case this court, speaking through Justice Weaver, said, loc. cit. 494:

"Finally it is argued that, conceding the conditions of the bond as written to be in excess of the requirements of the ordinance, it may still be enforced as a common-law obligation. In support of this proposition counsel submit many precedents. That this and other courts have held in proper cases that where, for any reason, a bond given in professed or attempted compliance with a statute is so defective as to be unenforceable as a statutory obligation, it may still be enforced as a common-law undertaking, may be freely admitted. The Iowa cases cited are Sheppard & Morgan v. Collins, 12 Iowa 573; Baker v. Bryan, 64 Iowa 565, 21 N. W. 83; Painter v. Gibson,

88 Iowa 123, 55 N. W. 84; Garretson v. Reeder, 23 Iowa 24. Three of these cases from this court were suits upon delivery bonds in all of which the parties signing the bonds had secured the delivery of attached property into their hands, and it was held that even though the statutes made no provision for such a bond, or the bond did not conform substantially to the statute, yet *if the obligors saw fit to offer their personal obligation in place of the attached property and it was accepted, the bond could be enforced—a conclusion which is not open to question.*" (Italics ours.)

The bond in question was given only to secure the funds in question, for the very good reason that there were no other funds to secure. The terms of the bond specifically included all funds received by the trustee. If the bond was given under section 10204, and could refer only to "donations," and if "donations" could not include moneys received for perpetual care, then there would have been no need of appointing a trustee. One was appointed, however, in 1916 for the express purpose of managing the funds received for such perpetual care. At that time and ever since, all the parties interested, and the court, knew that all the funds in his possession were received for the perpetual care of cemetery lots. These funds increased from time to time until 1928 when they exceeded the amount of the original bond. In order to protect the increased funds, the bond was then raised to $10,000.

In construing the term "donations" in section 10198, it is noted that the trustee appointed has authority

"to receive any and all moneys or property that may be donated for and on account of said cemetery * * * but he shall not be authorized to receive any gift, *except with the understanding that the principal sum is to be a permanent fund. and only the net proceeds therefrom to be used in carrying out the purpose of the trust created.*" (Italics ours.)

This statute contemplates that only the net income of the "donations" can be used *"in carrying out the purpose of the trust so created."* This clearly indicates that donations can be made for certain purposes. Therefore, if any particular purpose is named in the trust created by any "donation," only the net income therefrom can be used for that purpose; *because "only the net proceeds of the fund are to be used in carrying out the purpose of the trust created."*

Likewise the moneys received by the trustee under the bond in question were also received as a permanent fund, the net proceeds of which can only be used for a certain purpose, viz., that of furnishing perpetual care for the graves of the decedents for which the fund was created.

We can see no distinction in principle between a donation referred to in the statute and the receipt of money for the purpose of furnishing perpetual care for certain cemetery lots. Perpetual care of cemetery lots is one of the main purposes of the cemetery association. We think that the nature of the trust fund in question, and the purposes for which it was created, come within the meaning of the term "donations," contained in section 10198.

Another reason why the sureties are liable on the bond, is because of the liability created under a statutory bond required of trustees generally. Section 11876 of the Code provides:

"Trustees appointed by will *or by the court* must qualify and give bonds the same as executors, and shall be subject to control or removal by it in the same manner * * *." (Italics ours.)

Mr. Luick *was* appointed trustee by the court, and if his appointment should not be considered valid under section 10198 because the funds received by him might not be considered "donations," then his appointment should be considered effective under section 11876. The statutory bond under such an appointment is the one required by section 1059 of the Code. This is the ordinary official bond, and fully secures and protects all funds coming into the hands of a trustee. The bond furnished in the case at bar substantially complies with the requirements of the statutory bond referred to in section 1059 and fully secures the funds in question. This is also a statutory bond, and there would be a liability thereon.

■ It is also contended that this action is not brought by the real party in interest. It is sufficient to say that the bond in question was signed by both the trustee, as principal, and by his sureties for the benefit of the plaintiff cemetery association. This association is the obligee named in the bond and is the proper party to bring an action thereon. In re Youngerman's Estate, 136 Iowa 488, 114 N. W. 7, 15 Ann. Cas. 245; Tracewell v. Sanborn, 210 Iowa 1324, 232 N. W. 724.

For the reasons hereinabove expressed, we believe the judgment of the lower court was correct, and the same is hereby affirmed.

ANDERSON, MITCHELL, STEVENS, KINDIG, and DONEGAN, JJ., concur.