IN RE ESTATE OF EMMA TABASINSKY.

MABEL T. KIRK et al., Administrators, Appellees, v. UNITED STATES FIDELITY & GUARANTY COMPANY et al., Appellants; D. W. BATES, Receiver, Appellee.

No. 44842.

1106

Deacon, Sargent & Spangler and Don Hines, for appellees.

Grimm, Elliott, Shuttleworth & Ingersoll and H. B. White, for appellants.

Dale Stentz, for D. W. Bates, receiver.

Miller, J.—The proceedings herein were instituted pursuant to sections 11984 and 11985 of the Code, 1931. Section 11984 provides that if an executor fails to make any payment in accordance with an order of court, any person aggrieved thereby may, on 10 days notice to him and his surety, apply to the court for judgment against them on their bond. Section 11985 provides that the court shall hear the application in a summary manner and may render judgment against them for the amount of money directed to be paid. The word "summary" is sometimes interpreted as analogous to the word "brief". Such interpretation has no application to the record herein. Appellants' abstract comprises 653 pages, without the index. It was deemed insufficient and appellees have filed an amendment thereto, which, in turn, was denied by appellants, resulting in the certification to this court of a voluminous record for our perusal. The principal facts shown by such record are the following:

Emma Tabasinsky died testate October 31, 1929. Her will,

which was executed July 16, 1929, was admitted to probate November 18, 1929. It provided for the payment of debts and expenses, made a bequest of $500 to a grandson, Pierre Salzer, and divided the balance of the estate equally among four surviving children, claimants herein, with a provision that the share of the son, Roy, should be held in trust by the Springville Savings Bank, and, if he should die without issue, his share should be paid to the other three children. The Springville Savings Bank was named executor and qualified as such on November 26, 1929, by filing a bond in the sum of $60,000 with the Southern Surety Company as surety. The appraised value of the estate was $72,432. The inventory showed various certificates of deposit, several being on the Springville Savings Bank, together with stocks, bonds and other property. The first report of the bank, as executor, filed February 9, 1931, showed a cash balance of $24,688.43.

On December 13, 1930, the four adult children of the testatrix entered into a stipulation of settlement, the purpose of which was to abrogate the trust created for the share of Roy. On December 16, 1930, this agreement was submitted to the court with an application that the estate be disposed of pursuant thereto. The bank, as executor, resisted the application. The matter remained in abeyance until February 1932, when negotiations between the four children and the bank resulted in the execution of a stipulation of settlement on February 4, 1932, which provided that the trust created for Roy's share be set aside, the bank be paid $2,000 for services as executor, its attorney be paid $1,000, all costs and expenses of administration and the legacy to Pierre Salzer be paid and the balance of the moneys and personal property be divided equally among the four adult children; the bank was to distribute the moneys in its hands in monthly partial payments of $2,500 and upon default the entire balance would be due and payable, the bank to pay 4 percent interest from November 20, 1931, the personal property to be divided in kind as far as practicable, the bank to execute quitclaim deed to the real estate.

Paragraphs 8 and 9 provided as follows:

"8. Upon the division and complete distribution and final payment of the funds and all other real and personal property composing the estate, the Springville Savings Bank shall file a final report and be discharged as executor and trustee and shall be relieved from any and all liability to any of the parties hereto as trustee.

"9. This stipulation is binding upon the parties hereto only upon its approval by the District Court of Linn County, Iowa."

On the same day that it was executed, the stipulation was submitted to the court with an application for its approval and an order was entered which provided that "it is ordered that the said stipulation as herein filed be, and the same is hereby approved by the Court, and the trust attempted to be created by the will of deceased and imposed upon the said Springville Savings Bank is hereby set aside, and the said executor relieved from any duties, responsibilities and obligations thereunder, and the estate is to be settled and distribution made in accordance with the terms of said stipulation, and upon the execution and performance of the terms and agreements of the said stipulation the executor shall be discharged from all further liability and obligation either as executor or as trustee." On March 22, 1932, the Southern Surety Company having become insolvent and proceedings for its liquidation having been commenced, the court entered an order directing the bank, as executor, to file a new bond. Such a bond was executed and filed on May 18, 1932, in the sum of $60,000 with the United States Fidelity & Guaranty Company as surety.

The bank was late in making its remittance under the stipulation of settlement for the months of February and March, defaulted in May, June and July, closed its doors on July 12th, and, on July 15, 1932, was adjudged insolvent, placed in receivership, and ordered liquidated.

The bank filed a second report as executor on July 9, 1932, showing cash on hand in the amount of $19,301.09. The balance on hand when the bank closed, according to its books, was

$17,551.42. On July 15, 1932, the bank was removed as executor and two of testatrix's children, Mabel T. Kirk and Dollie E. Tabasinsky, were appointed administrators with will annexed and qualified as such on August 3, 1932. The administrators filed a claim in the receivership of the bank, claiming a preference. The matter was tried out and on December 5, 1933, a decree was entered which provided "that the total amount of said trust fund which had not been accounted for by the said bank as Executor of the said Estate on the date of the closing of the bank was in the sum of Seventeen Thousand Five Hundred Fifty-one Dollars and Forty-two Cents ($17,551.42), as fixed in the said former decree, plus the sum of $3,502.26 as interest, making a total trust fund of Twenty-one Thousand Fifty-three Dollars and Sixty-eight Cents ($21,053.68)." The sum of $2,604.05 had been allowed as a preferred claim by an order of November 22, 1933, and the balance of $18,449.63 was allowed as a general claim to be paid out of the sums collected from stockholders on their stockholders' liability.

On July 3, 1934, an application was filed asking that the court determine the amount of funds in the estate for which the bank, as executor, had failed to account. On the same day, the court fixed the amount at $18,449.63 with interest from December 5, 1933, and directed payment thereof. Payment not being made, on July 5, 1934, these summary proceedings were commenced against the United States Fidelity & Guaranty Company, as surety, asking for judgment for the amount ordered paid.

Voluminous pleadings resulted, in spite of which the matter was finally brought to trial on May 27, 1938. After the evidence was closed, on July 30, 1938, the surety was granted leave to file requests for findings of fact and conclusions of law authorized by section 11435 of the Code, 1935. On August 2, 1938, 31 such requests were filed. On August 20, 1938, the court filed its findings of fact and conclusions of law, which comprise 16 pages of the abstract. Pursuant to them, it fixed the liability of the surety in the sum of $23,362.08, entered judgment accordingly with provision that, upon payment of

1110

the judgment by the surety, it would be subrogated to any and all claims which the claimants might have against D. W. Bates, receiver of the Springville Savings Bank. From this judgment, the surety has appealed, asserting assignments of error in 16 divisions and undertaking to support the same with a brief and argument of 468 pages.

■ I. At the outset, it is important to note that this matter was tried to the court without a jury. The action is not in equity. Appellant recognized as much when it asked for and secured findings of fact and conclusions of law pursuant to section 11435 of the Code, 1935. Accordingly, on disputed questions of fact, it is neither our privilege nor duty to find the facts, but merely to determine from the evidence what the court was warranted in finding them to be. If any such finding of fact is supported by substantial, competent evidence, the finding of the court is binding upon us.

■ II. Appellant's first assignment of error challenges the jurisdiction of the court to set aside a ruling made November 10, 1937, upon appellant's application to determine the law in advance of trial, pursuant to section 11131 of the Code, 1935. Two questions were presented by the application. The court's answer to the questions was that, upon the facts pleaded in appellant's answer being established, the transaction of February 4, 1932, would constitute an "investment", made pursuant to section 12772 of the Code, 1931, and appellant would not be liable thereon as surety. The ruling granted appellees an exception and 10 days to elect whether they would stand on the ruling or plead over. On November 13, 1937, the court granted appellees until November 25, 1937, within which to plead further, move for a new trial, or move to set aside and vacate or modify the ruling. On November 22, 1937, appellees filed a motion to vacate the ruling. On December 6, 1937, appellant filed a resistance thereto. On March 16, 1938, the court ordered the motion submitted with the case and reserved its ruling thereon until after the hearing. On July 30, 1938, after the evidence was closed, the court sustained ap-

pellees' motion and vacated the ruling of November 10, 1937. We are satisfied that the court retained jurisdiction to decide the matter and to vacate such ruling. There is no merit in appellant's contention.

■ III. Appellant next asserts that the ruling of November 10, 1937, should have been adhered to because, under the evidence, the transaction of February 4, 1932, constituted an investment, made pursuant to section 12772 of the Code, 1931, and a default in regard thereto would not make appellant liable therefor. There is no merit in this contention. We have held expressly that, for a guardian to claim the benefit of section 12772, it is necessary that the approval of the court precede the making of the investment. In re Guardianship of Nolan, 216 Iowa 903, 249 N. W. 648. The statute so provides, in plain terms. The investment of funds by the bank herein occurred long before the transaction of February 4, 1932. The statutory requirements were not met.

■ IV. Appellant asserts that the transaction of February 4, 1932, constituted a termination of the bank's functions as executor, a novation or pro-tanto assignment, the creation of a debtor and creditor relationship, and a capacity other than that of fiduciary and beneficiary so that appellant was not liable for the bank's defaults in regard thereto. We find no merit in such contention.

The gist of appellant's contention is that the transaction of February 4, 1932, amounted to the equivalent of a distribution of the assets of the estate, and an accounting therefor by the executor, so that the executor was released and discharged thereby. To so construe the stipulation is to ignore or do violence to express provisions therein contained.

Paragraph 8 of the stipulation provides that, "upon the division and complete distribution and final payment of the funds and all other real and personal property composing the estate," the bank shall file a report and "be discharged as executor and trustee." The order of court, approving the stipulation, provided that "upon the execution and performance of

the terms and agreements of said stipulation, the executor shall be discharged." These provisions are clear. They must be considered and given effect. The contentions of appellant ignore them. But we cannot.

V. Appellant contends that the transaction of February 4, 1932, complied with the provisions of section 9285 of the Code, 1931, constituted the selection of the bank as a depository, and the surety is not liable for its defaults as such. We find no merit in this contention.

We have held, repeatedly, that, where an executor or administrator was operating a private bank and deposited funds of the estate in such bank, he was accountable therefor in his fiduciary capacity and not as a depository. Estate of Kendrick, 214 Iowa 873, 880, 243 N. W. 168; Bookhart v. Younglove, 207 Iowa 800, 807, 218 N. W. 533; McEwen v. Fletcher, 164 Iowa 517, 529, 146 N. W. 1, Ann. Cas. 1916D, 631. The same rule has been applied to a corporate bank and its surety. Snyder v. Hartford Acc. & Ind. Co., 214 Iowa 1055, 1057, 243 N. W. 343. Without undertaking to decide whether a bank that is the executor can qualify as a depository under section 9285 of the Code, we are satisfied that the order of February 4, 1932, did not meet the requirements of the statute. The stipulation provided that, upon final payment of the funds, the bank should be discharged as executor and the order provided that, upon performance of the terms of the stipulation, the executor should be discharged. This order was insufficient to change the status of the bank from that of executor to that of depository under section 9285.

VI. Appellant asserts that, by the transaction of February 4, 1932, appellees ratified the maladministration of the estate that preceded said date and, having accepted the benefits of the transaction, are estopped to assert a claim against appellant. Had the bank performed its obligations under the stipulation, there might be some basis for appellant's contention. In view of the fact that the bank was in default thereunder when appellant's bond was filed, we see no merit therein.

VII. Various contentions are made in reference to charges

of fraud, asserted by appellees as a basis for avoiding any prejudice to their rights because of the transaction of February 4, 1932. Since we find that their rights were not prejudiced by such transaction, we need not consider such contentions.

 VIII. Appellant asserts that the decree, entered in the receivership of the bank, fixing the liability of the bank to appellees, is not binding upon appellant as surety for the bank. We see no merit in this contention.

In In re Estate of Sterner, 224 Iowa 605, 612, 277 N. W. 366, 370, we state:

"The general rule many times announced by this court is that a judgment or decree against an executor or administrator is conclusive against the sureties on the bond, although they were not parties to the proceedings and cannot be collaterally questioned by them in an action on the bond, their only remedy being by way of appeal, writ of error, or application for a new trial, unless fraud or mistake is shown in the procuring of said order or judgment. In re Estate of Jackson, 217 Iowa 1046, 1053, 252 N. W. 775, 91 A. L. R. 937; In re Estate of Carpenter, 210 Iowa 553, 559, 231 N. W. 376; Baker v. Baker, 220 Iowa 1216, at 1223, 264 N. W. 116, 120, 103 A. L. R. 995."

The court's finding, that no fraud or mistake was established in reference to the receivership decree, is warranted by the evidence. There is no merit in appellant's contention.

 IX. Appellant complains of the entry of the order of July 3, 1934, requiring the bank to account. This order merely fixed the amount of the bank's liability at the same figure which had been fixed by the decree in the receivership. There was no prejudice to appellant.

 X. Appellant contends that its bond was secured by fraud practiced upon it by the bank and that appellees were guilty of concealment which makes them parties to the fraud. An obligee is under no duty to make disclosures to a prospective surety, in the absence of inquiry by the surety, unless a fit opportunity is afforded. Sherman v. Harbin, 125 Iowa 174, 180, 100 N. W. 629. The court was warranted in holding as it did

that no such opportunity was afforded appellees. There was no breach of duty on their part. Appellant's. contention is without merit.

 XI. Appellant asserts that the extension of time, given the bank by the transaction of February 4, 1932, releases it as surety. For an extension of time to discharge a paid surety, there must be prejudice shown. Appellant's bond was not executed until several months after February 4, 1932, and, when it was executed, the bank was in default under the stipulation of February 4, 1932, so that the whole amount was then due and payable. There is no merit in appellant's contention.

 .XII. Appellant asserts that its bond was required of it pursuant to section 11888 of the Code, 1931, and accordingly it is not liable for devastavits, misappropriations or wrongful acts occurring prior to the date it was filed, May 18, 1932. We have heretofore answered such contention adversely. Brooke v. American Sav. Bk., 207 Iowa 668, 677, 223 N. W. 500; Bookhart v. Younglove, 207 Iowa 800, 806, 218 N. W. 533; New Amsterdam Cas. Co. v. Bookhart, 212 Iowa 994, 1000, 235 N. W. 74, 76 A. L. R. 897; Ellyson v. Lord, 124 Iowa 125, 139, 99 N. W. 582. In the Brooke case we state (207 Iowa at page 677, 223 N. W. at page 504), as follows:

"By the great weight of authority, even where a so-called 'substitute bond' is executed upon the valid release of the former sureties, the sureties on the latter bond are held liable for defalcation occurring prior to the time of the execution of said latter bond. The duty devolves upon the subsequent surety to ascertain to his own satisfaction with reference to the condition of the estate before binding himself as surety upon the bond. The obligation of the bond is to pay the funds of the estate to the person entitled thereto, upon the order of the court. There is no breach of this obligation until there is a failure to pay. The subsequent surety is not permitted by the law to bind himself to the performance of said duty and then say that the devastavit occurred prior to the time when he become liable on the bond. * * * Reason and the great weight of authority

impel us to hold that, although the bond may be a so-called 'substitute bond,' the sureties thereon are liable for defalcation occurring prior to the time of its execution.''

In Ellyson v. Lord, supra, we state (124 Iowa at page 139, 99 N. W. at page 588) as follows:

''Such a bond is security for the final accounting by the administrator for all funds coming into his hands during the administration, and it is immaterial whether the funds which he fails to account for were received before or after the execution of the bond. The breach of duty as to which the bond is given as security is the failure to make a final accounting. In this respect the bond of an executor or administrator differs from the bond of a public officer. Scofield v. Churchill, 72 N. Y. 565; Lacoste v. Splivalo, 64 Cal. 35 (30 Pac. Rep. 571); Bellinger v. Thompson, 26 Or. 320 (37 Pac. Rep. 714); Choate v. Arrington, 116 Mass. 552; State ex rel. v. Creusbauer, 68 Mo. 254; Dugger v. Wright, 51 Ark. 232 (11 S. W. Rep. 213, 14 Am. St. Rep. 48).''

Appellant became surety for the bank's obligation to make a full and final accounting. The bank failed to perform such duty. Appellant is liable for its default.

XIII. Appellant complains of the action of the court in overruling certain objections to testimony on the part of appellees regarding their opinion as to the legal effect of the transaction of February 4, 1932. Even were we disposed to the view that the rulings were erroneous, reversal would not result because no prejudice to appellant is shown. See Ceretti v. Des Moines City Ry Co., 228 Iowa 548, 551, 293 N. W. 45, 46, and cases cited therein.

XIV. Appellant asserts that the summary proceedings authorized by sections 11984 and 11985 of the Code, 1931, are not available herein, that the court erred ''in holding that it had jurisdiction to proceed in a summary manner''. This question was first raised by special appearance, which was abandoned. Appellant eventually filed an answer and went to

trial thereon. Any objection to the court's jurisdiction over appellant was thereby waived. We have recently recognized the jurisdiction of the probate court over the subject matter of a claim against the surety for a defaulting executor. In re Carson's Will, 227 Iowa 941, 289 N. W. 30. Since the court had jurisdiction of the parties and the subject matter, there is no merit in appellant's contentions.

XV. Appellant complains of the court's method of computing interest. It contends that the interest is more than that provided for by the stipulation of February 4, 1932. The interest allowed conforms to the decree that was entered in the receivership of the bank. Appellant contends that that decree is not binding upon it. We have determined otherwise. Accordingly, there is no merit in this contention of appellant.

There is no question but that the bank imposed upon appellant when it induced it to become surety on its bond as executor herein. The bank was in serious difficulties. While its ultimate failure may not have been readily apparent, its situation was known to be desperate. The representations which it made to appellant to induce it to become surety on the bond were, in many respects, false. Appellant's reliance thereon has been disastrous. That the result is harsh goes without saying. The vigorous resistance of appellant's counsel to the liability imposed upon their client is readily understandable. The argument submitted to this court in support of their contentions is able. But, since we find no merit in such contentions, the judgment must be and it is affirmed.—Affirmed.

HALE, STIGER, BLISS, SAGER, OLIVER, HAMILTON, and MITCHELL, JJ., concur.